T.C. Summary Opinion 2003-7

UNITED STATES TAX COURT

WILLIAM HERBERT WHITEHURST, III AND CARLA CHERLENE WHITEHURST,
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8479-01S.                    Filed January 30, 2003.

William Herbert Whitehurst, III and Carla Cherlene
Whitehurst, pro se.

<u>Innessa Glazman-Molot</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise
indicated, subsequent section references are to the Internal

Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes of $3,443 for 1997, $2,740 for 1998, and $3,370 for 1999. After concessions by the parties,[1] the issues for decision are: (1) Whether petitioner Carla Whitehurst's bowling activity constitutes an activity not engaged in for profit; (2) if the activity was engaged in for profit, to what extent petitioners are entitled to deduct the claimed Schedule C expenses; and (3) whether petitioners are entitled to certain claimed itemized deductions.[2]

Petitioners resided in Annapolis, Maryland, and in Bermuda at the time they filed their petition. Some of the facts have been stipulated and are so found. For clarity and convenience we have combined our findings of fact and conclusions.

---

[1] Petitioners concede that they are not entitled to a deduction for an additional personal exemption for 1998 claimed on their return and that they are not entitled to the deductions claimed for Mr. Whitehurst's work clothes and shoes for 1997, 1998, and 1999.

Respondent concedes that petitioners are entitled to deductions for State taxes of $1,501 for 1999; union dues of $264 for 1997, $264 for 1998, and $260 for 1999; cleaning expenses of $250 for 1997, $260 for 1998, and $270 in 1999; subscription expenses of $100 for 1997, $250 for 1998, and $250 for 1999; job agency expenses of $125 for 1997; and tax preparation fees of $180 for 1997.

[2] Respondent also adjusted petitioners' additional child tax credits for 1998 and 1999 and petitioners' education credits for 1998 and 1999. These adjustments are computational; therefore, we need not address them.

Issue 1.  Bowling Activity

Petitioner Carla Whitehurst (Mrs. Whitehurst) has been an avid bowler since she was 5 years old.  As a child growing up in Bermuda, she bowled nearly every day.  Mrs. Whitehurst competed internationally as a top junior bowler in Bermuda.  Her parents also competed in bowling tournaments.

In 1995 Mrs. Whitehurst began competing in amateur bowling tournaments in which cash prizes were awarded to the top-scoring competitors.  The bowling tournaments that she competed in generally offered cash prizes that ranged from $1,500 for first place to $50 for a lower place finish, though some of the larger tournaments offered prize winnings as high as $10,000, $20,000, or $40,000 for first place.  She competed in tournaments for amateur bowlers with a "handicap"; that is, points added to the competitor's score.  Tournaments for professional or "scratch" bowlers without handicaps offered smaller prize winnings than the tournaments for amateur bowlers because they had fewer participants.  Most of the tournaments in which she competed were sponsored by National Amateur Bowling, Inc. (NABI), for which the entry fees ranged from $25 up to $85.  Mrs. Whitehurst was a member of NABI.  She believed that the entry fees for professional bowling tournaments, which were up to $400, were too high in comparison to the prize winnings offered, which ranged

from $8,000 to $15,000; therefore, she did not compete in professional tournaments.

Mrs. Whitehurst practiced bowling several times during the week, including evenings and lunch breaks from her full-time job. She also bowled in a league.

Except for one tournament in Las Vegas, Nevada, to which she flew, Mrs. Whitehurst drove to bowling tournaments in Delaware, Maryland, Virginia, North Carolina, South Carolina, and Florida. Although she usually traveled alone, on occasion she traveled with her husband, children, or James Godwin, her father and coach. Most tournaments began on either a Thursday or Friday and ended on a Sunday.

Mrs. Whitehurst competed in 39 bowling tournaments in 1997, 48 in 1998, and 43 in 1999. She placed first in three tournaments, second in five tournaments, and in the top 20 in eight tournaments from 1997 through 1999. Discouraged by her lack of success in winning tournaments, Mrs. Whitehurst did not compete in bowling tournaments after 2000, and her bowling activity ceased. At the time of trial, she continued to bowl with a bowling league.

Petitioners reported income and claimed deductions for
expenses with respect to the bowling activity as follows:

|  | 1997 | 1998 | 1999 |
|---|---|---|---|
| Income: | | | |
| Prize winnings | $3,052 | $2,725 | $889 |
| Expenses: | | | |
| Car and truck[1] | 5,889 | 6,240 | 6,258 |
| Repairs and maintenance | 703 | 605 | 542 |
| Supplies | 350 | 157 | 226 |
| Travel | 3,540 | 3,998 | 3,137 |
| Meals and entertainment | 1,271 | 1,295 | 1,034 |
| Other (entry fees) | 8,700 | 7,968 | 7,415 |
| Total expenses: | 20,453 | 20,263 | 18,612 |
| Loss | (17,401) | (17,538) | (17,723) |

[1] Petitioners claimed deductions for the standard
mileage rate for the years at issue.

In the notice of deficiency respondent disallowed the
claimed Schedule C deductions for 1997, 1998, and 1999 and
determined that Mrs. Whitehurst did not engage in the bowling
activity for a profit.  Respondent asserts that the element of
personal pleasure is inherently present in the bowling activity.

As an alternative position in the notice of deficiency
respondent disallowed the following claimed deductions:

|  | 1997 | 1998 | 1999 |
|---|---|---|---|
| Car and truck | $2,532 | $763 | $894 |
| Supplies | 350 | 157 | 226 |
| Repairs and maintenance | 703 | 605 | 542 |
| Travel | 2,220 | 3,332 | 2,610 |
| Meals and entertainment | 825 | 977 | 629 |
| Other (entry fees) | 5,483 | 4,562 | 6,246 |

Respondent disallowed the claimed deductions because either
petitioners did not provide books and records reflecting the

claimed amounts, or the expense deductions were not otherwise allowable.

A taxpayer seeking to deduct trade or business expenses under section 162 must establish that the underlying activity was engaged in with an actual and honest profit objective. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer must have entered into or continued the activity with the actual, honest, and bona fide objective of making a profit. Filios v. Commissioner, 224 F.3d 16, 23 (1st Cir. 2000), affg. T.C. Memo. 1999-92; Dreicer v. Commissioner, supra at 644-645; sec. 1.183-2(a), Income Tax Regs. In determining whether the taxpayer has the objective of making a profit, it may be sufficient that there is a small chance of making a large profit. Sec. 1.183-2(a), Income Tax Regs. Objective indicia may be considered to establish the taxpayer's true intent. Id. We consider all of the facts and circumstances in determining whether a taxpayer entered into the activity for a profit, placing greater weight upon objective facts than the taxpayer's statements of intent. Dreicer v. Commissioner, supra at 645.

The following nine nonexclusive factors are relevant in determining whether the taxpayer engaged in the activity for profit: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or her advisers; (3)

the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation.  Sec. 1.183-2(b), Income Tax Regs.

We now consider whether Mrs. Whitehurst's bowling activity was an activity she pursued with the objective of making a profit.  Not all of the factors listed above are applicable to the facts of this case; therefore, we focus on only those factors that are relevant.

a.  <u>Manner in Which the Taxpayer Carries On the Activity</u>

When considering the manner in which the taxpayer carried on the activity, we may consider whether she carried on the activity in a businesslike manner and maintained complete and accurate books and records that indicate that she engaged in the bowling activity for a profit.  Sec. 1.183-2(b)(1), Income Tax Regs.  A change of operating methods, adoption of new techniques, or abandonment of unprofitable methods may indicate a profit motive. <u>Id.</u>

Mrs. Whitehurst did not maintain or produce to either respondent's agent or the Court a journal or a book of accounts for the bowling activity.  Mrs. Whitehurst, however, maintained and produced numerous hotel, restaurant, gasoline, credit card, and rental car receipts, airplane tickets, copies of canceled checks, bank records, and bowling tournament score sheets that reflect the expenses incurred with respect to the bowling activity.  Mrs. Whitehurst recorded her expenses by "just jotting information down on the tournament flyer" because the tournaments were hectic.  While her records were somewhat disorganized and partially incomplete, they generally reflect her receipts and expenses.  Petitioners did not maintain a separate bank account for the bowling activity.

Because Mrs. Whitehurst had not been able to win any of the large tournaments offering large prize winnings (i.e., $20,000 or $40,000), she changed her strategy during 1998 and decided to compete in more local and smaller tournaments.  In 1999, Mrs. Whitehurst changed her strategy again and she decided to compete in more tournaments in Florida that offered the larger prize winnings.  She stopped competing in tournaments in 2000.  Her changes in strategy and ultimate decision to stop competing in tournaments both support her claim that she entered into the activity with a profit objective.  See id.

b.  Expertise of the Taxpayer or Her Advisers

Preparation for the activity by extensive study of its accepted business and economic practices or consultation with experts may indicate that the taxpayer has a profit objective where the taxpayer carries on the activity in accordance with those practices.  Sec. 1.183-2(b)(2), Income Tax Regs.

Before Mrs. Whitehurst began competing in bowling tournaments, she consulted with other bowlers and tournament directors to determine the likelihood of her success in the tournaments.  Mrs. Whitehurst was concerned that she would not be able to successfully compete against the male bowlers.  A NABI tournament director assuaged her concerns by discussing bowling lane conditions that were favorable to women and the women's records of winnings.

Petitioners consulted with a tax return preparer.  Upon the advice of the tax return preparer, petitioners amended their 1995 return and filed a Form 1040X on which they claimed a loss from the bowling activity.  The tax adviser also advised Mrs. Whitehurst to keep receipts.

The consultations with experts support the claim that Mrs. Whitehurst entered into the bowling activity with a profit objective.  See id.

c.  Time and Effort Expended by the Taxpayer

The fact that a taxpayer devotes much of her personal time

and effort to carrying on the activity may indicate an intent to profit, particularly if the activity does not have substantial personal or recreational aspects.  Sec. 1.183-2(b)(3), Income Tax Regs.

The fact that Mrs. Whitehurst has devoted much of her personal time and effort to bowling generally supports her claim that she entered into the bowling activity with a profit objective.  See id.  Nevertheless, as we discuss in greater detail below, bowling has substantial personal or recreational aspects for Mrs. Whitehurst.  See id.  This factor is neutral.

d.  History of Income or Losses

A series of losses during the initial stage of an activity is not necessarily an indication that the activity is not engaged in for profit.  Sec. 1.183-2(b)(6), Income Tax Regs.  However, continued losses which cannot be explained may be indicative that the activity is not engaged in for profit.  Id.

Mrs. Whitehurst did not earn prize winnings in excess of her expenses during the 5 years that she engaged in the bowling activity.  Petitioners claimed a loss of $4,712 for 1995 and a loss of $12,038 for 1996 with respect to the bowling activity. Her bowling scores had improved and were better in 1999 than they were in 1997 and her handicap was lower, yet she won fewer tournaments that offered large prize winnings and received less prize money.  She explained that her lack of success in winning

tournaments was essentially attributable to bad luck, but not to her skills as a bowler, which had improved.  We find her explanation of the reason for her losses to be reasonable, and we conclude that this factor neither supports nor undercuts the claim that she entered into the bowling activity with a profit objective.  See id.

e.  Amount of Occasional Profits, If Any

An opportunity to earn a substantial profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated.  Sec. 1.183-2(b)(7), Income Tax Regs.

Mrs. Whitehurst earned prize winnings of $1,528 in 1995, $3,030 in 1996, $3,052 in 1997, $2,725 in 1998, and $889 in 1999, but, as discussed above, her expenses exceeded her winnings. Although she did not win one of the top prizes of $10,000, $20,000, or $40,000, we are satisfied that she had an objective to win, and we find her testimony to be credible.  Her stated objective is supported by the fact that she would have earned significant prize winnings had she won one or more tournaments that offered a large prize.  See Bolt v. Commissioner, 50 T.C. 1007 (1968); Canale v. Commissioner, T.C. Memo. 1989-619; sec. 1.183-2(a), Income Tax Regs.  The fact that these tournaments were for amateur bowlers is not relevant because the prize

winnings offered were significant. While Mrs. Whitehurst did not earn a profit with respect to the activity, opportunity for profit existed. These facts support the claim that she entered into the bowling activity with a profit objective.

f. Financial Status of the Taxpayer

The fact that the taxpayer does not have substantial income from sources other than the activity may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from other sources may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements in the activity. Id.

Petitioners' combined wages totaled $81,104 in 1997, $87,667 in 1998, and $89,764 in 1999. Although Mrs. Whitehurst explained that she and her husband did not earn as much income as they wanted, their combined wage income for each of the 3 years at issue is not insignificant. Given that personal and recreational elements are involved in the bowling activity, as we discuss below, this factor does not support an intent to profit. See id.

g. Elements of Personal Pleasure

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. Sec. 1.183-2(b)(9), Income Tax Regs. The fact that the taxpayer derives personal pleasure from engaging in the

activity is not sufficient to cause the activity to be classified as not engaged in for profit. Id.

Mrs. Whitehurst has been an avid bowler nearly all of her life. During the years at issue and at the time of trial she was a member of a bowling league, and she bowled with her family. Mrs. Whitehurst testified that the bowling tournaments were long, tiring, and difficult, but not pleasurable, and that driving to tournaments in Florida was especially difficult. Although we recognize that driving long hours to a bowling tournament is an arduous task, we are not convinced that Mrs. Whitehurst does not derive personal pleasure from or recreation in bowling. The personal pleasure or recreation that she derives from the bowling activity, however, is not sufficient to cause the bowling activity to be classified as not engaged in for profit. See id. Therefore, this factor is neutral.

Having considered the above factors and recognizing that no one factor is controlling, we conclude that Mrs. Whitehurst entered into the bowling activity with a profit objective and thus hold for petitioners on this issue. See Engdahl v. Commissioner, 72 T.C. 659, 671 (1979).

Issue 2. Expense Deductions

We now consider respondent's alternative position that petitioners are not entitled to certain claimed Schedule C expenses related to the bowling activity. We will consider the

expenses in the order and by the categories as deducted on petitioners' returns.

Generally, the burden of proof is on the taxpayer. Rule 142(a)(1). The burden of proof may shift to the Commissioner under section 7491 if the taxpayer establishes that he introduced credible evidence and complied with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, maintain required records, and fully cooperate with the Secretary's reasonable requests. Section 7491 is effective with respect to Court proceedings arising in connection with examinations by the Commissioner commencing after July 22, 1998, the date of its enactment by section 3001(a) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 726.

Petitioners timely filed their return for the 1997 year. Petitioners have not alleged, and it is not clear from the record, that the examination of the 1997 return commenced after July 22, 1998; accordingly, we conclude that the burden remains on petitioners for 1997. The returns for 1998 and 1999 were filed after the effective date of section 7491; therefore, the examinations necessarily commenced after the effective date of section 7491. Petitioners have argued neither that section 7491 is applicable nor that they have satisfied the requirements of

section 7491. Therefore, the burden of proof remains on petitioners for 1998 and 1999.

a. Car and Truck Expenses

A taxpayer may be allowed to deduct all ordinary and necessary expenses paid or incurred during the taxable year. Sec. 162(a). Deductible business expenses include actual operating expenses of automobiles used in the trade or business and traveling expenses while away from home solely in the pursuit of a trade or business. Sec. 1.162-1(a), Income Tax Regs.

Although generally a taxpayer is required to keep records to establish the amount of his deductions under section 6001 and section 1.6001-1(a), Income Tax Regs., if there is evidence that deductible expenses were incurred, the Court may estimate the amount of expenses and allow a deduction based upon an approximation of expenses, notwithstanding the lack of substantiating documentary evidence in the record. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Deductions claimed with respect to certain expenses are subject to additional substantiation requirements as provided under section 274. No deduction or credit shall be allowed under section 162 with respect to, among other items, any listed property, as defined under section 280F(d)(4), unless the taxpayer substantiates the expense. Sec. 274(d); sec. 1.274-

- 16 -

5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  "Listed property" includes any passenger automobile. Sec. 280F(d)(4)(A)(i).  The taxpayer must substantiate the expense as follows:

> by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, * * * (C) the business purpose of the expense or other item, and * * *  [Sec. 274(d).]

See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  The taxpayer must substantiate each element of an expenditure by adequate records or sufficient evidence corroborating his statements.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Written evidence has more probative value than oral evidence alone.  Id.  The taxpayer must establish that the expenditure was directly related to the active conduct of the taxpayer's trade or business.  Sec. 1.274-2(a)(1)(i), Income Tax Regs.

A self-employed individual may deduct a mileage allowance for ordinary and necessary expenses of local transportation and travel away from home.  Sec. 62(a)(1); sec. 1.62-2(e)(2), Income Tax Regs.; sec. 1.62-2T(e)(2), Temporary Income Tax Regs., 63 Fed. Reg. 52600 (Oct. 1, 1998); sec. 1.274(d)-1(a)(1), Income Tax Regs.; sec. 1.274(d)-1T, Temporary Income Tax Regs., 63 Fed. Reg. 52601 (Oct. 1, 1998).  The Commissioner is authorized to establish the standard mileage rate that is deemed to satisfy the

substantiation requirements.  Sec. 1.274(d)-1(a)(1), Income Tax Regs., supra.  A taxpayer may use the standard mileage rate in lieu of actual operating and fixed costs of the automobile allocable to business purposes, including depreciation, maintenance and repairs, tires, gasoline, oil, and insurance. Sec. 1.274(d)-1(a)(2)(iii), Income Tax Regs.; sec. 1.274(d)-1T(b), Temporary Income Tax Regs., supra; Rev. Proc. 96-63 sec. 5.03, 1996-2 C.B. 420, 422; Rev. Proc. 97-58 sec. 5.03, 1997-2 C.B. 587, 589; Rev. Proc. 98-63 sec. 5.03, 1998-2 C.B. 818, 820. Tolls attributable to the use of an automobile for business purposes may be deducted as separate items.  Rev. Proc. 96-63 sec. 5.04, 1996-2 C.B. at 422; Rev. Proc. 97-58 sec. 5.04, 1997-2 C.B. at 589; Rev. Proc. 98-63 sec. 5.04, 1998-2 C.B. at 820.

Petitioners claimed deductions for an amount equal to the standard mileage rate times the miles that Mrs. Whitehurst drove in her automobile to and from bowling tournaments.  On the basis of a review of the record, we are satisfied that she drove approximately 11,899 miles in 1997, 16,900 miles in 1998, and 17,303 miles in 1999 with respect to her bowling activity. Petitioners also produced receipts for tolls paid while driving to and from bowling tournaments, for $9 in 1997, $25.35 in 1998, and $21.95 in 1999.

b.  Supplies and Repairs and Maintenance Expenses

Petitioners did not produce any documentary evidence or provide any testimony with respect to the deductions for supplies and repairs and maintenance; therefore, we sustain respondent's disallowance.

c.  Travel Expenses (Lodging, Airfare, and Rental Automobile)

Deductible travel expenses include fares, lodging, and expenses incident to travel.  Sec. 1.162-2(a), Income Tax Regs. No deduction shall be allowed with respect to traveling away from home unless the taxpayer substantiates each element of the expenditure or use, as described in section 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), in the manner provided in section 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Sec. 274(d)(1); sec. 1.274-5T(a)(1), Temporary Income Tax Regs., supra.  The elements to be substantiated are the amount of each separate expenditure, dates of departure and return and number of days spent away from home on business, destination or locality of travel, and the business reason for travel.  Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., supra.  Documentary evidence, such as receipts or paid bills, shall be required for any expenditure for lodging while traveling away from home and any expenditure of $75 or more, except with respect to transportation charges, if not

readily available. Sec. 1.274-5T(c)(2)(iii)(B), Temporary Income Tax Regs., 62 Fed. Reg. 13990 (Mar. 25, 1997).

Petitioners claimed deductions for actual travel expenses that Mrs. Whitehurst incurred while she traveled to and from and competed in bowling tournaments during the years at issue. Petitioners produced hotel bills and credit card receipts for hotel bills totaling $1,321.33 for 1997. Mrs. Whitehurst's airplane tickets to Las Vegas and letters from a travel agent and the director of a bowling group reflect that the airfare in 1997 was $249.03. A receipt reflects an expense of $172.15 for a rental car in 1997. We are satisfied that petitioners are entitled to a deduction of $1,742.51 for travel expenses incurred in 1997.

Petitioners produced hotel bills and receipts totaling $934.71 in 1998, and we are satisfied that petitioners are entitled to a deduction in this amount for travel expenses incurred in 1998.

Petitioners produced hotel bills and receipts totaling $972.89 in 1999, and we are satisfied that petitioners are entitled to a deduction in this amount for travel expenses incurred in 1999.

d. Meals and Entertainment

A taxpayer may be allowed to deduct 50 percent of any expense incurred for food or beverages. Sec. 274(n)(1)(A). No

deduction shall be allowed under section 162 for any traveling expense, which includes meals, unless the taxpayer substantiates each element of the expenditure or use, as described in section 1.274-5T(b), Temporary Income Tax Regs., supra, in the manner provided in section 1.274-5T(c), Temporary Income Tax Regs., supra. Sec. 1.274-5T(a)(1), Temporary Income Tax Regs., supra. The elements to be substantiated with respect to meals are the amount of each separate expenditure, dates of departure and return and number of days spent away from home on business, destination or locality of travel, and the business reason for travel. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., supra.

A self-employed taxpayer may use the Federal meal and incidental expenses (M&IE) rate for meal expenses paid or incurred while traveling away from home in lieu of substantiating the actual cost of meals; however, the taxpayer must substantiate the time, place, and business purpose of the travel. Sec. 1.274-5T(j), Temporary Income Tax Regs., 50 Fed. Reg. 46032 (Nov. 6, 1985); Rev. Proc. 96-64 sec. 2.04, 1996-2 C.B. 427, 427; Rev. Proc. 97-59, 1997-2 C.B. 594; Rev. Proc. 98-64, 1998-2 C.B. 825. The M&IE rate depends upon the locality of travel. 41 C.F.R. ch. 301 (1997, 1998, 1999); Rev. Proc. 96-64 sec. 3.02(1), 1996-2 C.B. at 428; Rev. Proc. 97-59 sec. 3.02(1), 1997-2 C.B. at 596; Rev. Proc. 98-64 sec. 3.02(1), 1998-2 C.B. at 827. A self-employed individual may use an amount computed at the Federal

M&IE rate for the locality of travel for each calendar day (or part thereof) that she is away from home for the 1997 tax year, under Rev. Proc. 96-64 sec. 5.03, 1996-2 C.B. at 429, or a prorated amount for the 1998 and 1999 tax years, under Rev. Proc. 97-59 secs. 5.03, 6.04, 1997-2 C.B. at 597, 600, and Rev. Proc. 98-64 secs. 5.03, 6.04, 1998-2 C.B. at 828, 831, respectively.

Petitioners deducted 50 percent of the actual expenses that Mrs. Whitehurst incurred for meals consumed while she traveled to and from and competed in bowling tournaments. Respondent allowed petitioners deductions for the M&IE rate only for days that Mrs. Whitehurst actually competed in a bowling tournament, but not for days when she traveled to and from each tournament.

Mrs. Whitehurst produced a small number of receipts from grocery stores and restaurants. Because respondent has already conceded that petitioners are entitled to use the M&IE rate in lieu of actual expenses, we allow petitioners deductions for the M&IE rate in lieu of actual meal expenses during days Mrs. Whitehurst traveled to and from and competed in bowling tournaments. Mrs. Whitehurst is entitled to use the M&IE rate for 44 days in 1997, 33 days in 1998, and 27 days in 1999, and the M&IE rate for travel to a high-cost locality for 4 days of travel in 1998 and 9 days in 1999.

e. Other (Entry Fees)

Petitioners produced fliers from bowling tournaments and

bowling scoring sheets that reflected most, but not all, of the claimed deductions for the entry fees for the bowling tournaments in which Mrs. Whitehurst competed. On the basis of a review of the evidence in the record, we are satisfied that petitioners are entitled to deductions for entry fees of $8,700 in 1997, $7,968 in 1998, and $7,415 in 1999.

## Issue 3. Schedule A Itemized Deductions

### a. Charitable Contributions

Petitioners claimed deductions for charitable contributions of $2,960 made in cash or by check and $500 made other than in cash or by check for 1997, $2,570 made in cash or by check and $500 made other than in cash or by check for 1998, and $2,255 made in cash or by check and $500 made other than in cash or by check for 1999.

The notice of deficiency disallowed the claimed deductions for charitable contributions in part as follows: $1,980 for 1997, $1,785 for 1998, and $1,628 for 1999. Respondent disallowed portions of the claimed charitable contributions because petitioners did not substantiate the claimed amounts.

Section 170(a)(1) allows as a deduction a charitable contribution payment of which is made within the taxable year. A charitable contribution includes a contribution or gift to or for the use of a corporation, trust, community chest, fund, or foundation organized and operated exclusively for religious,

charitable, scientific, literary, or educational purposes.  Sec.
170(c)(2)(B).

If a taxpayer makes a charitable contribution in cash or by
check, the taxpayer shall maintain for each contribution either a
canceled check, a receipt or letter from the donee charitable
organization, or other reliable written records showing the name
of the donee and the date and amount of the contribution.
Cavalaris v. Commissioner, T.C. Memo. 1996-308; sec. 1.170A-
13(a)(1), Income Tax Regs.  If the contribution is made in
property other than money, the taxpayer must also maintain a
receipt or letter from the donee showing the name of the donee,
the date and location of the contribution, and a description of
the property.  Sec. 1.170A-13(b)(1), Income Tax Regs.  In the
case where a receipt would be impractical to obtain, the taxpayer
shall maintain reliable written records with respect to each item
of donated property.  Id.  A deduction for a contribution of $250
or more will not be allowed unless the taxpayer substantiates the
contribution with a contemporaneous written acknowledgment from
the donee organization.  Sec. 1.170A-13(f)(1), Income Tax Regs.

Petitioners did not provide any documentary evidence that
reflects their claimed charitable contributions.  Mrs. Whitehurst
provided conflicting testimony at trial concerning receipts for
the claimed charitable contributions; on the one hand, she
alleged that she was in possession of receipts, but she also

explained that, at the time of trial, she resided in Bermuda and could not find her receipts. She also testified that she contributed money to her church but did not provide any details to support these contributions. Accordingly, respondent is sustained on this issue.

b. <u>Telephone Expenses</u>

Petitioners claimed deductions for 1997, 1998, and 1999 for unreimbursed employee expenses for a second telephone line in their home. Respondent disallowed the claimed telephone line expense deductions in full because petitioners did not substantiate the claimed amounts. Also, respondent was not satisfied that Mrs. Whitehurst worked out of a home office, that she had a home office for the convenience of her employer, and that she had a business purpose for the use of the computer.

Mrs. Whitehurst was employed full time during the years at issue as an environmental specialist for Horne Engineering Services Inc. (Horne), an engineering company. From 1995 to 1997 Horne had a contract with the U.S. Army, and Mrs. Whitehurst worked at the Aberdeen Proving Ground in Edgewood, Maryland. Mrs. Whitehurst operated the Army's environmental hotline and issued daily environmental regulatory summaries for Army staff.

In November 1997, around the time that Horne's contract with the Army ended, Mrs. Whitehurst worked at Horne's offices in Bel Air, Maryland. Because Horne did not have a desk or computer at

its office for Mrs. Whitehurst to use while she worked, she requested permission from her supervisor to work at home. Although her supervisor initially resisted the idea, he eventually approved her request. Mrs. Whitehurst produced a letter dated November 30, 2000, and signed by her office manager which states:

> Given the insufficient office work space and lack of a computer, Carla worked in her home. This was convenient for the company in that we did not have to lease more office space or purchase a computer to accommodate the needs of her project.

She visited Horne's offices approximately once a week for an hour.

She installed a second telephone line in her home to access the Internet and her e-mail, and so her clients could call her when they needed. Horne did not reimburse her for either the additional telephone line or the computer. Petitioners produced a copy of a telephone bill for $119.17 dated April 23, 1998, on which "64.30 work related" was handwritten. Petitioners also produced carbon copies of checks made payable to the telephone company reflecting the same account number as that on the aforementioned telephone bill for the following amounts on the following dates: $41.75 dated September 20, 1997; $119.17 dated May 19, 1998; $193.74 dated what appears to be September 16, 1998; and $44.79 dated June 18, 1999.

Performance of services as an employee constitutes a trade or business. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988). Telephone expenses may be deductible under section 162(a) if the expenses incurred are ordinary and necessary in carrying on a trade or business. Hairston v. Commissioner, T.C. Memo. 1995-566, affd. without published opinion 116 F.3d 492 (11th Cir. 1997); Green v. Commissioner, T.C. Memo. 1989-599. Any charge for basic local telephone service with respect to the first telephone line provided to any residence of the taxpayer shall be treated as a personal expense. Sec. 262(b).

We conclude that petitioners are entitled to deductions for expenses for the second telephone line used in connection with Mrs. Whitehurst's trade or business of $41.75 for 1997, $258.04 for 1998, and $44.79 for 1999.

Petitioners also produced carbon copies of checks made payable to the telephone company that reflect an account number different from the account number written on the bill discussed above. These checks were not written to pay for the telephone line used by Mrs. Whitehurst in connection with her trade or business but were for a personal home telephone; therefore, the amounts reflected therein are not deductible. Id.

c. Equipment and Supplies

Petitioners claimed deductions for unreimbursed employee expenses for equipment and supplies for 1997, 1998, and 1999,

specifically for a computer and computer-related equipment Mrs. Whitehurst purchased and work-related supplies Mr. Whitehurst purchased. Respondent disallowed the claimed deductions for equipment and supplies in full.

A copy of a checking account statement from the 1998 tax year reflects the following: A purchase of $253.99 and a handwritten notation of "work fax machine"; a purchase from "X Technologies" of $624 and a handwritten notation of "work computer"; and a purchase from "X Technologies" of $45, which is encircled but otherwise bears no notation. A sales receipt from 1998 for computer software diskettes reflects a shipping charge totaling $54. A copy of a check carbon copy dated February 13, 1998, indicates a "computer + monitor purchase". A receipt from 1999 from "Best Buy" reflects a purchase of $31.49 and bears a handwritten notation of "printer cable". A service activity report from 1999 reflects the repair of computer software problems for $85.

Mr. Whitehurst was employed full time during the years at issue by the Prince George's County government in Maryland as a construction standards inspector. His duties related to building construction and site development inspection and included weighing inspection, monitoring and regulating wetlands, and sediment control monitoring. His employer did not provide new equipment and did not replace worn-out equipment that was

required or helpful for the position.  Mr. Whitehurst testified that he purchased, for example, respirators, cleaning supplies for his automobile, insect repellant, ratchet wrenches, shovels, safety glasses, hard hats, tape measures, and flashlights.  Mr. Whitehurst's employer provided him with an annual $250 allowance for "uniforms or whatever".

A taxpayer may be entitled to a depreciation deduction for exhaustion, wear, and tear of property used in a trade or business.  Sec. 167(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992).[3]  A taxpayer may be entitled to a depreciation deduction for computer software under section 167(f).  A computer or peripheral equipment, which is defined in section 168(i)(2)(B), is "listed property" under section 274(d)(4) as defined under section 280F(d)(4)(A)(iv) and will be subject to the substantiation requirements of section 274.  A computer or peripheral equipment may be excepted from the section 274 requirements under section 280F(d)(4)(B) if it is used exclusively at a regular business establishment and owned or leased by the person operating such establishment and only if the requirements of section 280A(c)(1) are met with respect to the regular business establishment.

---

[3]  Petitioners have not elected to deduct the cost of the computer or the computer-related equipment as a current expense under sec. 179.

A "regular business establishment" includes a portion of a dwelling unit that is exclusively used on a regular basis as the principal place of business for the taxpayer's trade or business. Sec. 280A(c)(1)(A).  For tax years beginning after December 31, 1998, in the case of an employee, the exclusive use must be for the convenience of his employer, and the term "principal place of business" includes a place of business which is used by the taxpayer for the administrative or management activities of a trade or business if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities.  Sec. 280A(c)(1).[4]

Although Mrs. Whitehurst regularly worked in her home for the convenience of her employer, it is not clear that she used any portion of the home exclusively for the purpose of carrying on her trade or business.  See sec. 280A(c)(1)(A).  Because Mrs. Whitehurst's computer and computer-related equipment do not fall under the home office exception to section 274 under sections 280F(d)(4)(B) and 280A(c)(1)(A), they are listed property under section 274(d)(4), and their deductibility is subject to the strict substantiation requirements of section 274(d) (i.e., amount, time and place, and business purpose of the expense).

---

[4] Congress amended sec. 280A(c) to read as reflected above in the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 932(a), 111 Stat. 881.

Petitioners have established that Mrs. Whitehurst purchased and used the computer and computer-related equipment in her trade or business and have satisfied the requirements of section 274. We conclude that petitioners are entitled to a depreciation deduction for the fax machine, the computer, and the software diskettes, purchased in 1998 for $931.99. We also conclude that petitioners are entitled to a deduction for computer services of $85 for 1999 and a depreciation deduction for the printer cable purchased in 1999 for $31.49.

Mr. Whitehurst did not provide any testimony or written evidence as to the amount spent on supplies purchased and used in the course of his employment. It is not clear that the expenses, if any, were unreimbursed by his employer or that they were ordinary and necessary to the carrying on of his trade or business under section 162(a). We conclude that petitioners are not entitled to a deduction for unreimbursed employee expenses for equipment and supplies purchased with respect to Mr. Whitehurst's employment.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered under Rule 155.